UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Case

NATIONAL AUTO LENDERS, INC., [1]                          Case No. 18-24586-LMI
        Debtor.

_____/

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY NATIONAL AUTO LENDERS, INC. AND THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**

Dated:  April 1, 2019

**BERGER SINGERMAN LLP**
Paul Steven Singerman, Esq.
Florida Bar No. 378860
Brian G. Rich, Esq.
Florida Bar No. 38229
1450 Brickell Avenue, Suite 1900
Miami, Florida 33133
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
*Counsel to the Debtor*

**GENOVESE JOBLOVE & BATTISTA, P.A**.
Paul J. Battista, Esq.
Florida Bar No. 884162
Glenn D. Moses, Esq.
Florida Bar No. 174556
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for the Official Committee of Unsecured
Creditors*

---

[1]  The Debtor's address is 14645 NW 77th Avenue, Suite 203, Miami Lakes, FL 33014.  The last four digits of the
    Debtor's federal tax identification number are 0723.

9010495-1

# TABLE OF CONTENTS

**Page**

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION .......................... 1

    A.    Defined Terms ................................................................................. 1

    B.    Rules of Interpretation .................................................................... 9

    C.    Exhibits ........................................................................................... 9

ARTICLE II.    ADMINISTRATIVE AND PRIORITY CLAIMS ....................................... 10

    A.    Administrative Claims .................................................................. 10

    B.    Professional Compensation and Reimbursement Claims .................................... 10

    C.    Priority Tax Claims ....................................................................... 10

    D.    Statutory Fees ............................................................................... 11

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................... 11

    A.    Summary ....................................................................................... 11

    B.    Classification and Treatment of Claims and Equity Interests ......................... 12

ARTICLE IV.    ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN .......................... 15

    A.    Classes Entitled to Vote ................................................................ 15

    B.    Acceptance by Class of Claims ..................................................... 15

    C.    Nonconsensual Confirmation ........................................................ 16

    D.    Revocation or Withdrawal; No Admissions .................................. 16

    E.    Amendment of Plan Documents .................................................... 16

    F.    Special Provision Governing Unimpaired Claims ......................... 16

ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN ................................ 16

    A.    Source of Funding for Plan Distributions ..................................... 17

    B.    Section 1146 Exemption ............................................................... 17

    C.    Corporate Action .......................................................................... 17

    D.    Vesting of Assets in the Reorganized Debtor ............................... 17

    E.    Distributions ................................................................................. 18

    F.    Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims .................... 18

    G.    Revesting of Equity Interests ....................................................... 18

    H.    Continued Corporate Existence of the Reorganized Debtor .......... 18

-i-

# TABLE OF CONTENTS
### (continued)

**Page**

| | | | |
|---|---|---|---|
| I. | Post-Confirmation Accounts | | 18 |
| J. | Management of the Reorganized Debtor | | 19 |
| K. | Effectuating Documents & Further Transactions | | 20 |
| L. | Section 1145 Determination | | 21 |
| M. | Preservation of Causes of Action | | 21 |
| N. | Prosecution and Settlement of Causes of Action | | 22 |
| O. | Automatic Stay | | 22 |
| P. | Closing of the Chapter 11 Case | | 22 |
| ARTICLE VI. | PROVISIONS GOVERNING DISTRIBUTIONS | | 22 |
| A. | Manner of Cash Payments Under the Plan | | 23 |
| B. | Entity Making Distributions | | 23 |
| C. | Distribution Dates | | 23 |
| D. | Record Date for Distributions | | 23 |
| E. | Delivery of Distributions | | 23 |
| F. | Undeliverable and Unclaimed Distributions | | 24 |
| G. | Compliance with Tax Requirements | | 24 |
| H. | No Payments of Fractional Dollars | | 25 |
| I. | Interest on Claims | | 25 |
| J. | No Distribution in Excess of Allowed Amount of Claim | | 25 |
| K. | Setoff and Recoupment | | 25 |
| L. | De Minimis Distributions; Charitable Donation | | 26 |
| M. | United States Trustee Fees | | 26 |
| N. | Withholding from Distributions | | 27 |
| O. | Distributions in Satisfaction; Allocation | | 27 |
| P. | No Distributions on Late-Filed Claims | | 27 |
| ARTICLE VII. | DISPUTED CLAIMS | | 28 |
| A. | Disputed Claims Reserve | | 28 |
| B. | Resolution of Disputed Claims | | 28 |
| C. | Objection Deadline | | 28 |

-ii-

# TABLE OF CONTENTS
(continued)

**Page**

D.    Estimation of Claims.................................................................................. 28

E.    No Distributions Pending Allowance ........................................................ 28

F.    Resolution of Claims ................................................................................. 29

ARTICLE VIII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...................................................................................................... 29

A.    General Treatment: .................................................................................... 29

B.    Bar to Claims Arising from Rejection, Termination or Expiration ................... 29

C.    Assumption of Executory Contracts and Unexpired Leases............................ 30

D.    Indemnification and Reimbursement ......................................................... 31

ARTICLE IX.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..................... 31

A.    Conditions Precedent ................................................................................ 31

B.    Waiver ........................................................................................................ 32

ARTICLE X.    EFFECT OF CONFIRMATION; INDEMNIFICATION, RELEASE,
INJUNCTIVE AND RELATED PROVISIONS............................................ 32

A.    Compromise and Settlement ..................................................................... 32

B.    Vesting of Assets ....................................................................................... 32

C.    Title to Assets; Discharge of Liability ...................................................... 33

D.    Binding Effect ........................................................................................... 33

E.    Discharge of Claims .................................................................................. 33

F.    Discharge of the Debtor ............................................................................ 33

G.    Releases ..................................................................................................... 34

H.    Exculpation ............................................................................................... 35

I.    Limitations on Exculpation and Releases ................................................. 36

J.    Injunction .................................................................................................. 36

K.    Release of Liens ........................................................................................ 37

ARTICLE XI.    RETENTION OF JURISDICTION................................................................ 37

ARTICLE XII.    MISCELLANEOUS PROVISIONS............................................................. 38

A.    Modification of Plan .................................................................................. 38

B.    Revocation of Plan .................................................................................... 39

-iii-

# TABLE OF CONTENTS
(continued)

**Page**

C.   Binding Effect ................................................................. 39

D.   Successors and Assigns .................................................... 39

E.   Governing Law ................................................................. 39

F.   Reservation of Rights ....................................................... 40

G.   Title 1146 Exemption ....................................................... 40

H.   Section 1125(e) Good Faith Compliance ........................... 40

I.   Further Assurances ........................................................... 40

J.   Service of Documents ....................................................... 40

K.   Filing of Additional Documents ....................................... 41

L.   No Stay of Confirmation Order ......................................... 41

M.   Bankruptcy Rule 9019 Request; Impact ............................ 42

-iv-

## JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

National Auto Lenders, Inc. ("**Debtor**") and the Official Committee of Unsecured Creditors (the "**Committee**") (the Debtor and the Committee may be referred to as "**Proponents**") propose this Joint *Chapter 11 Plan of Reorganization Proposed by National Auto Lenders, Inc.*[2] (and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "**Plan**"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Article I.A herein ("**Defined Terms**")).

For a discussion of the Debtor's history, business, operations, assets and liabilities, for a summary and analysis of the Plan, preservation of Causes of Action, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the *Joint Disclosure Statement for Joint Chapter 11 Plan of Reorganization Proposed by National Auto Lenders, Inc. and the Official Committee of Unsecured Creditors*, dated April 1, 2019, as such disclosure statement may be amended, modified or supplemented (the "**Disclosure Statement**").

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

(1)    "*Administrative Claims*" means: (A) Claims that have been timely filed before the date provided by any other separate order of the Bankruptcy Court, for costs and expenses of administration under sections 365(d)(3), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased

---

[2]    All capitalized terms not otherwise defined herein shall be subject to the definition of such capitalized terms in Article I.A. hereof.

1

premises); and (B) the actual and necessary costs and expenses incurred in the ordinary course by the Debtor after the Petition Date of preserving the Estate that are entitled to priority under sections 365(d)(3), 503(b) and/or 507(a)(2) of the Bankruptcy Code.  Any fees or charges assessed against the Estate of the Debtor under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claim and shall be paid in accordance with Article VI.M ("**United States Trustee Fees**") of this Plan.  Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

(2)    "*Affiliate*" means, any Person that is an "affiliate" of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

(3)    "*Allowed*" means, with respect to any Claim against the Debtor, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its Schedules filed in the Chapter 11 Case as other than disputed, contingent or unliquidated and as to which the Proponents or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Case and that either is not Disputed or has been allowed by a Final Order; or (c) a Claim filed in the Chapter 11 Case that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with Debtor of the amount and nature of Claim executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms of this Plan; or (e) a Disputed Claim that the Proponents ultimately determine will not be objected to (such claim being deemed Allowed at the time such determination is made).

(4)    "*Available Cash*" means Cash in the Debtor's possession on the Effective Date and the net proceeds from the continued operations of the Debtor's business.

(5)    "*Avoidance Actions*" means a Cause of Action of the Debtor or its Estate, including without limitation, any action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan or any previous Order of the Bankruptcy Court), including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other direct or indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

(6)    "*Bank United*" means Bank United, N.A., the lender of the Debtor, pursuant to the Loan Documents.

(7)    "*Bankruptcy Code*" means Articles 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

-2-

(8)    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

(9)    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

(10)    "*Bar Date Orders*" means that certain *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* dated as of November 29, 2018 [ECF No. 43], establishing April 8, 2019 as the general bar date for filing proofs of Claim in the Chapter 11 Case.

(11)    "*Books and Records*" means all books and records of such Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

(12)    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

(13)    "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

(14)    "*Cash Flow*" means the Debtor's or the Reorganized Debtor's, as the case may be, EBITDA.

(15)    "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and causes of action that constitute property of the estate under Section 541 of the Bankruptcy Code, all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders and/or any other entities under the Bankruptcy Code, and any and all state and common law claims for breach of fiduciary duty against the Debtor's directors and officers solely to the extent such directors and officers served in such capacity prior to the Effective Date) against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date, including, but not limited to, the Avoidance Actions.

(16)    "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

(17)  "*Claim*" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim, as such term is defined in section 101(5) of the Bankruptcy Code.

(18)  "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim, which shall be the date as provided for in the Consolidation Order; provided, however, that the Proponents or the Reorganized Debtor, as applicable, may seek additional extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  A party requesting to extend the Claims Objection Bar Date may specify which entities may benefit from such an extension.

(19)  "*Committee*" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case by the Office of the United States Trustee on December 4, 2018, with the following members: Alex Muxo, Mickey McLellan, Robert Forman, Canopic Holdings, LP (attn.: Dr. Gary Richmond), Curtis Brown, Mark Shelnutt, Phil and Heidi Bifulco, Wendy Lamb Labonte and Luis Rodriguez Terol.

(20)  "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III herein and pursuant to section 1122(a) of the Bankruptcy Code.

(21)  "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

(22)  "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(23)  "*Consolidation Order*" means the Order, should it be entered by the Bankruptcy Court approving the *Joint Motion for Entry of Order: (A) Conditionally Approving Disclosure Statement, (B) Authorizing Solicitation of Votes on the Plan, (C) Approving Solicitation Procedures Including Committee Solicitation Letter, and (D) Scheduling a Combined Hearing on Approval of the Disclosure Statement and Confirmation of the Plan,* to be filed by the Proponents.

(24)  "*Creditor*" shall have the meaning in section 101(10) of the Bankruptcy Code.

(25)  "*Cure*" means a Claim for all non-contingent, accrued and unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties, under an executory contract or unexpired lease (or assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

-4-

(26)    "*Cure Claim*" means a Claim for a Cure.

(27)    "*Debtor*" has the meaning set forth in the preamble hereof, and where applicable, the Estate thereof.

(28)    "*Debtor in Possession*" means the Debtor in its capacity as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(29)    "*Deficiency Claim*" means any the Allowed Unsecured Claim for all, or any portion of, any Secured Claim that is determined to be unperfected or undersecured.

(30)    "*Disallowed"* with respect to a Claim shall mean a Claim that is not Allowed.

(31)    "*Disclosure Statement*" has the meaning set forth in the preamble hereof.

(32)    "*Disputed*" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtor or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

(33)    "*Disputed Claims Reserve*" means the reserve funds created pursuant to Article VII herein.

(34)    "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

(35)    "*Distribution Agent*" means the Person or Entity responsible for making Distributions under the Plan, which will be the Debtor or the Reorganized Debtor.

(36)    "*Effective Date*" means the first Business Day after the Confirmation Date selected by the Debtor on which the conditions precedent specified in Article IX of this Plan have been either satisfied or waived.  Within two (2) Business days of the Effective Date, the notice of the Effective Date shall be filed in the Bankruptcy Court.

(37)    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(38)    "*Equity Interest*" means the interests of any holder of an equity security of any of the Debtor represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, partnership interest or other instrument evidencing a present ownership interest in any of the Debtor, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

-5-

(39) "*Estate*" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Case.

(40) "*Exculpated Parties*" means collectively, (i) Osvaldo (Ozzie) F. Ramos, Dania Ramos-Infante and W. Knox North, (ii) each member of the Committee and any representative of any such member, including Alex Muxo, Mickey McLellan, Robert Forman, Canopic Holdings, LP (attn.: Dr. Gary Richmond), Curtis Brown, Mark Shelnutt, Phil and Heidi Bifulco, Wendy Lamb Labonte and Luis Rodriguez Terol, (iii) Berger Singerman, LLP, (iv) Development Specialists, Inc., (v) Genovese Joblove & Battista, P.A., and (vi) KapilaMukamal.

(41) "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

(42) "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

(43) "*General Bar Date*" means April 8, 2019, as established in the Bar Date Order.

(44) "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Professional Compensation Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, or Equity Interests.

(45) "*Guarantors*" means Osvaldo (Ozzie) F. Ramos, Dania Ramos-Infante and W. Knox North.

(46) "*Impaired*" means "*impaired*" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

(47) "*Lien*" shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

(48) "*Loan Agreement*" means that certain Second Amended and Restated Loan and Security Agreement dated as of July 1, 2013, as further amended by a First Amendment to Second Amended and Restated Loan and Security Agreement dated as of April 19, 2016, by and between the Debtor, Wells Fargo Bank, N.A., successor by merger with Wells Fargo Preferred Capital, Inc., as agent and lender and Bank United, N.A.

(49) "*Loan Documents*" means that certain Second Amended and Restated Loan and Security Agreement dated as of July 1, 2013, as further amended by a First Amendment to Second Amended and Restated Loan and Security Agreement dated as of April 19, 2016,

-6-

together with certain instruments, documents, agreements and guaranties executed in connection therewith, by and between the Debtor, Wells Fargo Bank, N.A., successor by merger with Wells Fargo Preferred Capital, Inc., as agent and lender and Bank United, N.A.

(50)    "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

(51)    "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof or any other form of legal entity or enterprise.

(52)    "*Petition Date*" means November 23, 2018, the date on which the Debtor filed the Chapter 11 Case.

(53)    "*Plan*" has the meaning set forth in the preamble hereof.

(54)    "*Plan Documents*" means all documents that aid in effectuating the Plan, including, without limitation, all addenda, exhibits, schedules, which documents (as may be amended, modified or supplemented from time to time) shall be in form and substance reasonably acceptable to the Proponents.

(55)    "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(56)    "*Pro Rata*" shall mean the proportion (expressed as a percentage) that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

(57)    "*Professionals'*" means any Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

(58)    "*Record Date*" means the date that the Disclosure Statement is conditionally approved by the Bankruptcy Court.

(59)    "*Reinstated*" or "*Reinstatement*" means, with respect to any Claim of Interest, the treatment provided for in section 1124 of the Bankruptcy Code.

(60)    "*Released Parties*" means, collectively, (i) Bank United; and (ii) Wells Fargo.

(61)    "*Reorganized Debtor*" means the Debtor, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

-7-

(62)    "*Representatives*" means, with regard to an Entity (including the Debtor), any current or former officers, directors, employees, attorneys, Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

(63)    "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

(64)    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule to be included in the Disclosure Statement or Plan Supplement and identifying (i) the executory contracts and unexpired leases to be assumed by the Debtor; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease proposed to be assumed.

(65)    "*Secured Claims*" means Claim(s) against the Debtor that are secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

(66)    "*Subordinated Claims*" means (a) any Claim of any Person or Entity that is liable with the Debtor on or has secured the Claim of another creditor to the extent that such co-obligor's Claim is for indemnity, contribution, or reimbursement and is not Allowed on or before the Confirmation Date, (b) any Claim for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (and notwithstanding the general inapplicability of Chapter 7 of the Bankruptcy Code), including any lien securing such Claim, (c) any Claim subordinated under section 510 of the Bankruptcy Code and any lien securing such Claim, or (d) any Claim subordinated per the terms of this Plan or otherwise by Final Order of the Bankruptcy Court.

(67)    "*Subordinated Debt Claims*" mean those certain Claims of Creditors for monies loaned to the Debtor which were contractually subordinated to the Secured Claims of Wells Secured Claims of Wells Fargo and Bank United.

(68)    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

(69)    "*Tax Returns*" means all tax returns, reports, certificates, forms or similar statements or documents, including amended tax returns or requests for refunds.

(70)    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

-8-

(71)   "*Unimpaired*" means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

(72)   "*Wells Fargo*" means Wells Fargo Bank, N.A. (successor by merger with Wells Fargo Preferred Capital, Inc.), as agent and lender pursuant to the Loan Documents.

## B.    Rules of Interpretation

(i)    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(ii)    The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

(iii)    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.    Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan, have been filed with the Clerk of the Bankruptcy Court not later than three (3) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtor's counsel by a written request sent to the following address:

9010495-1

Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Phone: 305-755-9500
Facsimile: 305-714-4340
ATTN: Paul Steven Singerman, Esq.
singerman@bergersingerman.com

with copy to Brian G. Rich, Esq., brich@bergersingerman.com

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

### A.    Administrative Claims

The Debtor shall pay each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that any Claim seeking administrative expense status included as a part of a proof of claim filed in this Chapter 11 Case shall not qualify as an Administrative Claim.

### B.    Professional Compensation and Reimbursement Claims

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing.  The Debtor shall pay the Allowed Claims of each Professional from Cash on hand in accordance with the Orders of the Bankruptcy Court.  From and after the Confirmation Date until the Effective Date, the Debtor, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period.

### C.    Priority Tax Claims

The Debtor shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim

-10-

becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

### D.    Statutory Fees

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period.   The Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Plan Administrator, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating reports indicating all the cash disbursements for the relevant period.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary

(i)    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

(ii)    The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

(iii)    Summary of Classification and Treatment of Classified Claims and Equity Interests.

-11-

| Class | Claim | Status | Entitled to Vote? |
|:---:|:---:|:---:|:---|
| 1 | Other Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Lenders' Secured Claims | Impaired | Yes |
| 3 | Allowed General Unsecured Trade Claims | Unimpaired | No. |
| 4 | Subordinated Debt Claims | Impaired | Yes. |
| 5 | Subordinated Insider Unsecured Claims Held by the Guarantors | Impaired | Yes. |
| 6 | Equity Interests | Unimpaired | No; Deemed to Accept the Plan |

**B.     Classification and Treatment of Claims and Equity Interests**

(i)     Other Priority Claims (Class 1)

(a)     **Classification**: Class 1 consists of Other Priority Claims.

(b)     **Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Other Priority Claim shall receive the full unpaid amount of such Allowed Other Priority Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Allowed Other Priority Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim.

(c)     **Voting**: Class 1 is Unimpaired, and therefore, the holders of Other Priority Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(ii)     Lenders' Secured Claims (Class 2)

(a)     **Classification:** Class 2 consists of the Lenders' Secured Claims, which are determined by the Bankruptcy Court to be Allowed Secured Claims.

(b)     **Treatment**: Pursuant to the agreement of the parties and subject the mutually agreed upon loan documents, including reinstated personal guaranties from the Guarantors, which shall be filed as a Plan Supplement no later than 5 days prior to the Confirmation Hearing, Lenders shall have an Allowed Secured Claim in an amount equal

-12-

to the outstanding principal balance of the obligations owed to the Lender under the pre-Petition Loan Agreement with the Debtor as of the Effective Date, plus unpaid interest accrued thereunder at the contract rate through the Effective Date. Lenders shall retain their liens on the Debtor's assets to the same extent and priority, and of the same kind and nature, as Lenders had pre-Petition, which liens shall include without limitation, a first lien on the Debtor's repossessed vehicles. Interest shall accrue on the Lender's Allowed Secured Claim from and after the Effective Date at the Prime Rate + 75 basis points, provided that such interest rate shall be capped at 6.75% per annum. The Debtor shall pay the Lender's Allowed Secured Claim in full on or before July 31, 2022. If the Allowed Secured Claim has not been paid in full by such date, then the Debtor shall commence an orderly "run-off" of its loan portfolio consistent with the financial pro forma attached to the Disclosure Statement as Exhibit 2, whereby the Lenders' Allowed Secured Claims shall be satisfied in full on or before December 31, 2023. The Debtor shall make fixed payments to the Lender in the amount of $510,000 per month from the Effective Date through July 2022. On the Effective Date, the Debtor shall pay the Lenders an amount equal to $1.5 Million, plus $400,000 in default interest, plus Lender professional fees with said sums respectively representing a principal prepayment, a reduced amount due to the Lenders for pre-and post-Petition default interest and certain fees and expenses. As of the Effective Date and other than as provided above, the Lenders shall waive any other amounts claimed to be due from the Debtor, excluding certain miscellaneous fees, subject to the Debtor's right to object to same. Pursuant to Article IX Section G of the Plan, as of the Effective Date, the Debtor, the holders of Subordinated Debt Claims, Committee and the Estate shall release the Lenders from any and all claims or Causes of Actions, including any and all claims subject to the Challenge Period.

(c)    As long as the Reorganized Debtor is not in default under the terms of the Plan, the Lenders in this Class 2 shall be enjoined from pursuing the Guarantors.

(d)    **Voting**: Class 2 is impaired and entitled to vote to accept or reject the Plan.

(iii)    <u>Allowed General Unsecured Trade Claims (Class 3)</u>

(a)    **Classification**: Class 3 consists of the Allowed General Unsecured Claims of Trade Creditors.

(b)    **Treatment:**Allowed General Unsecured Trade Claims shall be paid in full, within twenty-one (21) days of the Effective Date.

(c)    **Voting**: Class 3 is Unimpaired and therefore, the holders of Allowed General Unsecured Trade Claims in Class 3 are not entitled to vote to accept or reject the Plan.

-13-

    (iv)    <u>Subordinated Debt Claims (Class 4)</u>

    (a)    **Classification**: Class 4 consists of the Allowed Subordinated Debt Claims.

    (b)    **Treatment:** Except to the extent that a holder of an Allowed Subordinated Debt Claim agrees to a less favorable classification and treatment with the Debtor, each holder of an Allowed Subordinated Debt Claim shall receive a pro-rata share of a (i) fixed monthly payment in the amount of $100,000 (the "Fixed Payment") from and after the Effective Date through the earlier of payment in full of the Lenders' Allowed Secured Claims or December 31, 2023, and (ii) thereafter, subject to the consummation of a Refinancing (as defined below), if applicable, all net proceeds from the liquidation of the Debtor's assets, including the loan portfolio, in accordance with the financial pro forma attached to the Disclosure Statement as Exhibit 2, until the Subordinated Debt Claims are paid in full with interest.    Notwithstanding the loan documents entered into between the Debtor and the holders of the Subordinated Debt Claims pre-Petition, the Subordinated Debt Claims shall be restructured to provide for a fixed interest rate of 4.5% per annum, and shall have a maturity date of five (5) years from the Effective Date; provided, however, that in the event the pro-rata share of the Fixed Payment does not equate to an accrual of interest at 4.5%, then any shortfall in payments on such interest shall be capitalized into the respective Subordinated Debt Claim, and any excess in payments on such interest shall be applied to reduce the principal thereof.   In addition, the Subordinated Debt Claims shall be contractually subordinated to the Lenders' Allowed Secured Claims; provided, however, that the monthly payments to the holders of Subordinated Debt Claims shall be made by the Reorganized Debtor unless and until a monetary event of default occurs in respect of the Lenders' Allowed Secured Claims and the Lenders accelerate the debt in connection therewith.

    (c)    As long as the Reorganized Debtor is not in default under the terms of the Plan, Holders of Class 4 Claims shall be enjoined from pursuing the Guarantors in respect of pre-Petition Date guarantees of the Subordinated Debt Claims. As of the Effective Date, all pre-Petition Date guarantees of the Guarantors of the Subordinated Debt Claims shall be reinstated, provided that the obligations guaranteed thereunder shall be the obligations of the Reorganized Debtor to the holders of Subordinated Debt Claims under the Plan and not otherwise impaired by the Plan or confirmation of the Plan.

    (d)    **Voting**: Class 4 is Impaired and is entitled to vote to accept or reject the Plan.

-14-

(v)    <u>Allowed Subordinated Insider Unsecured Claims Held by Equity Holders (Class 5)</u>

(a)    **Classification**: Class 5 consists of the Allowed Subordinated Unsecured Claims of Insiders Held by Equity Holders.

(b)    **Treatment:**  Subordinated Insider Unsecured Claims shall not receive any payments, unless and until the Class 2, 3 and 4 Claims have been paid in full.

(c)    **Voting**: Class 5 is Impaired and is entitled to vote to accept or reject the Plan.

(vi)    <u>Equity Interests (Class 6)</u>

(a)    **Classification**: Class 6 consists of Equity Interests.

(b)    **Treatment**: Equity Holders shall retain their Interests.

(c)    **Voting**: Class 6 is Unimpaired and is, therefore, deemed to accept the Plan.

**ARTICLE IV.**
**ACCEPTANCE, REJECTION, AMENDMENT AND**
<u>**REVOCATION OR WITHDRAWAL OF THE PLAN**</u>

**A.    Classes Entitled to Vote**

Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law.  Classes 1, 3 and 6 are deemed to have accepted the Plan.  Claims in Class 2, 4 and 5 are impaired.  Votes from holders of Claims in Classes 2, 4 and 5 will be solicited as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.    Acceptance by Class of Claims**

Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be

-15-

aggregated and treated as one Allowed Claim in such Class.  For purposes of any Claim in any Impaired Class that is Disputed as to its amount only, the holder of such claim shall be entitled to vote on the Plan as if such holder held an Allowed Claim in an amount equal to the undisputed portion of such Claim.

### C.    Nonconsensual Confirmation

In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Article XII.  The Debtor shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

### D.    Revocation or Withdrawal; No Admissions

*Right to Revoke or Withdraw*.  The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtor in its sole discretion.

*Effect of Withdrawal or Revocation; No Admissions*.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

### E.    Amendment of Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan, the Exhibits to the Plan and any documents attached to such Plan and Exhibits to the Plan shall be as provided in such Plan and Exhibits to the Plan and their respective attachments.

### F.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

-16-

9010495-1

A. **Source of Funding for Plan Distributions**

Distributions to the holders of Allowed Claims shall be made from Available Cash and financed through the cash generated by the Debtor's operations.   A pro forma of the Debtor's proposed operations is attached to the Disclosure Statement as Exhibit 2.

The Debtor or the Reorganized Debtor, as applicable, will use the (i) Available Cash on the Effective Date, and (ii) Cash Flow on and after the Effective Date, or, where applicable, to make all Distributions required to be made by the Debtor or the Reorganized Debtor, as applicable, on and after the Effective Date in accordance with the Plan.

B. **Section 1146 Exemption**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any equity security or notes, or the creation, making, assignment delivery or recording of any mortgage, deed of trust, instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtor or its Estate or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales and use Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by the Confirmation Order, be directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

C. **Corporate Action**

All actions contemplated to be performed by the Debtor or the Reorganized Debtor pursuant to the Plan, or any corporate action to be taken by or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtor or the Reorganized Debtor.  All Persons, the Reorganized Debtor, Governmental Units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in the Debtor's officers, or managers to act on the Debtor's behalf in order to effectuate the Plan and the transactions contemplated herein.

D. **Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided in the Plan or the other Plan Documents, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective

Date, all property of each Estate, including Causes of Action, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  As of the Effective Date, the Reorganized Debtor may operate its businesses and use, acquire, and dispose of its property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  All privileges with respect to the property of the Estate, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.

### E.    Distributions

The Distributions will be made in accordance with the Plan by the Debtor and the Reorganized Debtor.

### F.    Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims will be cancelled and the obligations of the Debtor discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

### G.    Revesting of Equity Interests

Subject to the other provisions of this Plan, the Equity Interest Holders shall retain her or his or its Interests in the Debtor.

### H.    Continued Corporate Existence of the Reorganized Debtor

The Reorganized Debtor will exist after the Effective Date with all of the powers of a corporation under applicable law in the state of Florida  pursuant to its existing bylaws or other organizational documents in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.  Notwithstanding the above, but subject in all event to the Material Event Approval, each of the Debtor or Reorganized Debtor may change its status of incorporation or alter its corporate structure or business form (either through a merger, consolidation, restructuring, conversion, disposition, liquidation, dissolution, or otherwise) on or after the Effective Date as may be determined by the Debtor to be appropriate.

### I.    Post-Confirmation Accounts

The Debtor may establish one or more interest-bearing accounts as it determines may be

-18-

necessary or appropriate to effectuate the provisions of the Plan.

**J.    Management of the Reorganized Debtor**.  Existing management of the Debtor shall continue to serve in their respective capacities through the Effective Date and shall serve in the same capacity for the Reorganized Debtor, as set forth in the applicable existing organizational or operational documents of the Debtor.    The management team shall be compensated in the same manner that it historically has been compensated.  On or before the Effective Date, and without the need for any further order or authority, the Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Reorganized Debtor, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan.

Post-Effective Date, the Committee shall designate three (3) members of the Committee to serve as members of the Debtor's board of directors along with the existing directors of the Debtor (the designated Committee members to be "Outside Directors").  The Outside Directors shall be designated, and a Notice shall be filed with the Bankruptcy Court reflecting the designation no later than five (5) days' prior to the Confirmation Hearing.  The Outside Directors shall have all of the same duties, rights and responsibilities as the other members of the board of directors of the Debtor; provided however, that the Debtor shall not be able to engage in or pursue a Material Event without the prior approval a majority of the Outside Directors (the "Material Event Approval").  The Debtor shall at all times from and after the Effective Date maintain directors' and officers' liability insurance in such amounts and with such companies as required by the majority of the Outside Directors, the cost of which shall be borne by the Reorganized Debtor.  The Outside Directors shall also be entitled to select and engaged legal counsel and/or other professionals to assist them and/or advise them in the performance of their duties, the reasonable cost of which shall be borne by the Reorganized Debtor.  Notwithstanding anything herein or in the Plan to the contrary, a majority of the Outside Directors shall have the right to cause the Debtor at any time after the Effective Date to cause the Debtor to proceed with an orderly liquidation of its assets, including through a "run off" of the Debtor's loan portfolio whereby the Debtor would cease buying loans and would focus on the orderly liquidation of its assets. Subject to the preceding sentence and the requirement for Material Event Approval, the Reorganized Debtor would be able to continue to operate its business in the ordinary course of business consistent with the financial pro forma attached as Exhibit 2, including the assumptions underlying such financial pro forma without day to day involvement of the Outside Directors. The Outside Directors shall be entitled to receive financial and other information provided to members of the Debtor's board of directors, including specifically all reporting that is made by the Debtor to the Lenders.

For purposes of the Plan and the operation of the Reorganized Debtor pursuant to the Plan after the Effective Date, the following events (each a "Material Event") shall require that the Debtor obtain prior Material Event Approval: (i) any sale of the Debtor's assets not

specifically contemplated in the financial pro forma attached as Exhibit 2 to the Disclosure Statement, (ii) incurring any new debt outside the ordinary course of business, (iii) any refinancing of some or all of the Lenders' Allowed Secured Claims (the "Refinancing"), which Refinancing will need to address an increased payment to the holders of the Subordinated Debt Claims to compensate them for the lower interest rate set forth in the Plan on such Claims, (iv) entering into material contracts or modifications of existing material contracts, including leases for space, (v) modifying the loan documents with the Lenders in respect of the Lenders' Allowed Secured Claims, (vi) any material deviation from the operation of the Debtor's business as proposed under the financial pro forma attached as Exhibit 2 to the Disclosure Statement, or (vii) notwithstanding anything herein to the contrary, the filing, prosecution and/or settlement of any Causes of Action against holders of Subordinated Debt Claims.  If the Reorganized Debtor proposes to enter into, pursue or proceed with a Material Event, then the Reorganized Debtor will be required as a condition thereto to obtain the Material Event Approval from a majority of the Outside Directors.

The officers and directors of the Debtor and the Reorganized Debtor are authorized, without the need for any further order or authority, (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan, notes or securities issued or conveyed pursuant to the Plan, and (ii) to undertake any other action on behalf of the Debtor to implement or consummate the Plan.  Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of any Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any member, officer, creditor, or manager of the Debtor.

### K.    Effectuating Documents & Further Transactions

On or before the Effective Date, and without the need for any further order or authority, the Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Reorganized Debtor, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan.  The officers, members and managers, as the case may be, of the Debtor and the Reorganized Debtor are authorized, without the need for any further order or authority, (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan, notes or securities issued or conveyed pursuant to the Plan, and (ii) to undertake any other action on behalf of the Debtor to implement or consummate the Plan.  Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of any Debtor will, as of the Effective Date, be deemed to have occurred and be

-20-

effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any member, officer, creditor, or manager of the Debtor.

**L.      Section 1145 Determination**

The offer, purchase, sale, exchange and issuance of securities under the Plan, or in connection with the Plan, is exempt from the registration requirements under state and federal securities laws.

**M.      Preservation of Causes of Action**

The Debtor (prior to the Effective Date) and the Reorganized Debtor (on and after the Effective Date) shall retain all Causes of Action, except those which are expressly released, settled or compromised prior to the Confirmation Date. Based upon the proposed payments to Creditors, the Debtor does not anticipate filing any Avoidance Actions and has not undertaken any analysis regarding same.  The Committee is still investigating potential Avoidance Actions and expects to complete that investigation prior to the Effective Date.

On the Effective Date, the Causes of Action shall be preserved and vested in the Reorganized Debtor for the benefit of the Reorganized Debtor.  The Reorganized Debtor will have the right, in its sole and absolute discretion, to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action without seeking any approval from the Bankruptcy Court.    The Debtor shall have the right and authority to settle Causes of Action in the ordinary course of its business.

**UNLESS SPECIFICALLY PROVIDED FOR HEREIN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTOR AND THE REORGANIZED DEBTOR**.  Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or Reorganized Debtor do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.  It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of Reorganized Debtor.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

-21-

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a Released Party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

The Estate shall remain open, even if the Bankruptcy Case shall has been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received.

### N.      Prosecution and Settlement of Causes of Action

The Debtor or Reorganized Debtor, as applicable, (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Reorganized Debtor shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing, excluding ordinary course of business settlements consistent with the Debtor's practices, which shall not require Bankruptcy Court approval.

### O.      Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date.

### P.      Closing of the Chapter 11 Case

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules providing for earlier closure of the chapter 11 case, when all Claims against the Debtor have become Allowed Claims or Disallowed Claims, and the Debtor's Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtor deem appropriate, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Manner of Cash Payments Under the Plan

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtor or the Reorganized Debtor (or their respective agent(s)), as applicable, into the United States mail, or paid by wire transfer.  At the option of the Debtor or the Reorganized Debtor, as applicable, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtor or the Reorganized Debtor, as applicable, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtor or the Reorganized Debtor.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

### B.    Entity Making Distributions

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made, and the responsibility for holding the Disputed Claims Reserve will be, by the Debtor, if before the Effective Date, or the Reorganized Debtor if on or after the Effective Date. The Debtor and the Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

### C.    Distribution Dates

Distributions to holders of Claims shall be made as provided in Articles II and III of this Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Debtor or Reorganized Debtor, as applicable, shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Debtor or Reorganized Debtor, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date.

### E.    Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Debtor or Reorganized Debtor, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Debtor or Reorganized Debtor, as applicable, have not been notified in writing of a change of address.

### F.    Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim made by the Debtor or Reorganized Debtor, as applicable is returned as undeliverable, the Debtor or Reorganized Debtor, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Debtor or Reorganized Debtor, as applicable, has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims made by the Debtor or Reorganized Debtor, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim against the Debtor or Reorganized Debtor, as applicable, or their property. Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtor or Reorganized Debtor, as applicable. The Debtor or Reorganized Debtor, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Debtor or Reorganized Debtor, as applicable, at some point prior to the final Distribution.

### G.    Compliance with Tax Requirements

The Debtor or Reorganized Debtor, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims; provided, however, that the Debtor or Reorganized Debtor, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims without first filing a notice with the Court (and serving such notice on the holder of the Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims. The Debtor or Reorganized Debtor, as applicable, shall be authorized to collect such tax information from the holders of Claims (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all holders of Claims will need to identify

themselves to the Debtor or Reorganized Debtor, as applicable, and provide all tax information the Debtor or Reorganized Debtor, as applicable, deem appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Debtor or Reorganized Debtor, as applicable, may refuse to make a Distribution to any holder of a Claim that fails to furnish such information within the time period specified by the Debtor or Reorganized Debtor, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Debtor or Reorganized Debtor, as applicable, fails to withhold in respect of amounts received or distributable with respect to any such holder and such Debtor are later held liable for the amount of such withholding, such holder shall reimburse the Debtor or Reorganized Debtor, as applicable, for such liability.  Notwithstanding any other provision of the Plan, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

### H.   No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### I.   Interest on Claims

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

### J.   No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### K.   Setoff and Recoupment

-25-

The Debtor or Reorganized Debtor, as applicable, may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor or Reorganized Debtor, as applicable, or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor, as applicable, or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim. Any such setoffs or recoupments may be challenged in Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor or Reorganized Debtor, as applicable, and the Estate with respect thereto are reserved.

**L.     De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary in the Plan, the Debtor or Reorganized Debtor, as applicable, shall not be required to make a Distribution to any Creditor if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. On or about the time that the final Distribution is made, the Debtor or Reorganized Debtor, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Debtor or Reorganized Debtor, as applicable, to the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Debtor or Reorganized Debtor, as applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; (ii) Legal Services of Greater Miami, Inc.; (iii) Dade Legal Aid-Put Something Back Program; or (iv) Miami Foundation for Mental Health, Inc.

**M.     United States Trustee Fees**

The Reorganized Debtor shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Reorganized Debtor shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor or Reorganized Debtor, as applicable, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code. After the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay

-26-

quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtor's or Reorganized Debtor's, as applicable, case being closed pursuant to the terms of this Plan, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

### N.    Withholding from Distributions

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Debtor or Reorganized Debtor, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Debtor or Reorganized Debtor, as applicable, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Debtor or Reorganized Debtor, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims without first filing a notice with the Court (and serving such notice on the holder of the Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object.

### O.    Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtor and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

### P.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Case, including, without limitation, the General Bar Date and any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (a) any further action by the Debtor or Reorganized Debtor, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

## ARTICLE VII.
## DISPUTED CLAIMS

**A.    Disputed Claims Reserve**

The Debtor or Reorganized Debtor, as applicable, will withhold from the property that would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class as of the Effective Date, and shall place such withheld property in a Disputed Claims Reserve, which thereafter will be retained and administered by the Debtor Reorganized Debtor, as applicable.

**B.    Resolution of Disputed Claims**

The Proponents or Reorganized Debtor, as applicable, shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

**C.    Objection Deadline**

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.

**D.    Estimation of Claims**

At any time, the Debtor or Reorganized Debtor, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor, as applicable, have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or Reorganized Debtor, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**E.    No Distributions Pending Allowance**

-28-

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.   Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been allowed on the Effective Date.

### F.    Resolution of Claims

On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

### ARTICLE VIII.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    General Treatment:

**Within fourteen (14) days prior to the Confirmation hearing, the Debtor shall file and serve a Notice of all contracts that it intends to reject (the "Rejection Schedule"). Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed assumed, unless included on the Rejection Schedule or previously rejected.   Within 14 days prior to the Confirmation Hearing, the Debtor shall file a proposed Schedule of Cure Amounts for any leases or contracts that will be assumed under the Plan  (the "Cure Schedule").  Any party objecting the proposed cure amount as set forth in the Cure Schedule shall file an objection within three (3) days prior to the Confirmation hearing.  If no objection is filed, then the proposed cure amount will be deemed approved.  The Debtor shall have forty-five (45) days from the Effective Date to supplement the Rejection Schedule and Cure Schedule and the Bankruptcy Court will determine any disputes regarding.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtor, the Reorganized Debtor, their Estate, and all parties in interest in the Chapter 11 Case.**

### B.    Bar to Claims Arising from Rejection, Termination or Expiration

**Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Article VIII.A herein ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any**

-29-

executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor or Reorganized Debtor, as applicable, no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtor or otherwise pertaining to such order, or (b) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to VIII.A hereof ("General Treatment; Rejected if not Previously Assumed").  Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, assets, properties, or interests in property, or the Reorganized Debtor, or the Estate, assets, properties, or interests in property.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Reorganized Debtor of any objections to such Claim if asserted.

C.     **Assumption of Executory Contracts and Unexpired Leases**

(1)     Assumption of Executory Contracts and Unexpired Leases; Schedule of Assumed Executory Contracts and Unexpired Leases.  On the Effective Date, the Debtor will assume all of the executory contracts and unexpired leases not listed on the Rejection Schedule.

(2)     Modifications, Amendments, Supplements, Restatements, or Other Agreements. Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

(3)     Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.  Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Case will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor or the Reorganized Debtor.

(4)     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.    All Allowed Cure Claims will be satisfied by the Debtor by payment of the Cure in Cash to (i) holders of Allowed General Unsecured Trade Claims ("**Class 3**") per the terms of such section of the Plan, or (ii) holders of other Claims, or on the Effective Date or as soon as reasonably practicable thereafter, or (iii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtor and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court.  Any provisions or terms of the

-30-

Debtor's executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

(5)    Confirmation Order.  Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Reorganized Debtor within the meaning of section 365 of the Bankruptcy Code.  Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan.  Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Reorganized Debtor pursuant to section 365(k) of the Bankruptcy Code.

**D.    Indemnification and Reimbursement.**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtor for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtor against any Claims, costs, liabilities or causes of action as provided in the Debtor's operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, be treated as Class 5 Claims to the extent such Claims are not covered by any applicable insurance, including deductibles.  Nothing contained in the Plan shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtor or the Debtor's Estate to object to or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtor.

**ARTICLE IX.
CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.    Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

(1)    The Court shall have entered the Confirmation Order in form and substance acceptable to the Proponents confirming and approving the Plan in all respects, and the Confirmation Order shall have become a Final Order.

-31-

(2)    There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

(3)    The Plan Documents shall be in a form and substance reasonably acceptable to the Proponents, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments, may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

### B.    Waiver

Notwithstanding the foregoing conditions, the Proponents reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.    Any such written waiver of a condition precedent set forth in this Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.    Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### ARTICLE X.
### EFFECT OF CONFIRMATION; INDEMNIFICATION,
### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.    Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

### B.    Vesting of Assets

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or the Confirmation Order.  From and after the Effective Date, the Reorganized Debtor may operate the Debtor's business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.  In the event that the Reorganized Debtor's chapter 11 case is converted to a case under chapter 7 for any reason, any property held by either the Debtor or the Reorganized Debtor at any time, other than property that already has been

-32-

distributed under this Plan prior to conversion of the case from chapter 11 to chapter 7, shall revest in the Debtor.

### C.    Title to Assets; Discharge of Liability

Except as otherwise provided in the Plan including, but not limited to any limitations set forth in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtor free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor arising prior to the Effective Date, except as may be otherwise provided in the Plan.

### D.    Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, and any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### E.    Discharge of Claims

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, of any kind, nature, or description whatsoever against or in the Debtor or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided herein, upon the Effective Date, all existing Claims against the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against the Reorganized Debtor any such discharged Claim against or Equity Interest in the Debtor.

### F.    Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release, of any and all Claims, whether known or unknown, against the Debtor or Reorganized Debtor or any of their assets or

-33-

properties, regardless of whether the property has been distributed or retained pursuant to the Plan.  Without limiting the generality of the foregoing, the Debtor or Reorganized Debtor will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) of 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor arising before the Effective Date.  Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtor at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtor or the Estate (to the extent such action relates to a discharged claim).  Nothing in this Article V.G.8 should be interpreted as a discharge of the Debtor's or Reorganized Debtor's rights or obligations under the Plan.

G.      **Releases**

**Releases by the Debtor and the Estate.**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtor and its current and former Affiliates and Representatives and the Estates shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtor and their current and former Affiliates and Representatives and the Estate, from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtor or the Estate, including those in any way related to the Chapter 11 Case or the Plan, *provided, however,* that nothing herein or in the Plan shall be interpreted as a release of the Released Parties' or Reorganized Debtors' rights or obligations under the Plan.**

**Releases by Holders of Claims.**

**To the fullest extent permitted by applicable law, as of the Effective Date, each Person, other than the Debtor, who votes to accept the Plan or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall be**

-34-

deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties of and from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor and its Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise; provided that nothing contained in the foregoing provision or elsewhere in the Plan or Confirmation Order shall be construed as a release of any claims against any Released Party resulting from an act or omission; *provided, however,* that nothing herein or in the Disclosure Statement  shall  be interpreted as a release of the Released Parties' or Reorganized Debtor's rights or obligations under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in the Plan to the Released Parties pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by the Plan; (b) in the best interests of the Debtor and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.

## H.    Exculpation

Notwithstanding anything contained herein the contrary, the Exculpated Parties shall neither have nor incur any liability relating to the Chapter 11 Case to any Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud or willful misconduct.   Notwithstanding anything contained in this Article to the contrary, nothing shall restrict the United States Securities and Exchange Commission from bringing any regulatory or enforcement action for

-35-

**violation of the federal securities laws respecting any parties otherwise protected thereunder.**

### I.    Limitations on Exculpation and Releases

Nothing in this Plan shall be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from, the fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or limit the liability of the professionals of the Debtor or the Committee to their respective clients pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("**Limiting Liability for Malpractice**").

### J.    Injunction

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, the Estate, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtor or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

-36-

(i)    commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties;

(ii)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties;

(iii)    creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties; and

(iv)    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

### K.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Debtor.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Reorganized Debtor, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against the Debtor, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(ii)    grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

-37-

(iii)    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(iv)    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtor's or Reorganized Debtor's entitlement to recover assets held by third parties;

(v)    decide or resolve any motions, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date;

(vi)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(vii)    issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(viii)    enforce Articles within this Plan;

(ix)    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(x)    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xi)    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(xii)    enter an order and a Final Decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    **Modification of Plan**

-38-

Subject to the limitations contained in the Plan, the Proponents reserve the right in their sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and (2) after the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**B.    Revocation of Plan**

The Proponents reserve the right in their sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of either of the Debtor or any other Entity; or (c) constitute an admission of any sort by either of the Debtor or any other Entity.

**C.    Binding Effect**

On the Effective Date, the provisions herein shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

**D.    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**E.    Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations

-39-

arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

### F.    Reservation of Rights

The Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

### G.    Title 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### H.    Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Proponents and each of their Representatives have acted in "good faith" under sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

### I.    Further Assurances

The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### J.    Service of Documents

Any pleading, notice or other document required herein to be served on or delivered to the Debtor shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

-40-

To the Debtor:          **NATIONAL AUTO LENDERS, INC.**
                        Dania Ramos-Infante, Vice President,
                        Chief Financial Officer and Chief Operating Officer
                        14645 NW 77th Avenue, Suite 203
                        Miami Lakes, FL 33014
                        Telephone: (305) 828-8801
                        Email: dania@nalenders.com
                        With a copy to (which shall not constitute notice)

                        BERGER SINGERMAN LLP
                        Attn.: Paul Steven Singerman, Esq.
                        Attn.: Brian G. Rich, Esq.
                        1450 Brickell Avenue, Suite 1900
                        Miami, Florida 33131
                        Telephone:  (305)-755-9500
                        Facsimile:  (305) 714-4340
                        Email:  singerman@bergersingerman.com
                        with a copy to Maria Diaz, email: mdiaz@bergersingerman.com
                        Email:  brich@bergersingerman.com

**To the Committee:**

                        GENOVESE JOBLOVE & BATTISTA, P.A.
                        Attn:  Paul J. Battista, Esq.
                        Attn:  Glenn D. Moses, Esq.
                        100 SE 2nd Street, 44th Floor
                        Miami, FL 33131Telephone: (305) 349-2300
                        Facsimile: (305) 349-2310
                        Email: pbattista@gjb-law.com
                        Email:  gmoses@gjb-law.com


### K.    Filing of Additional Documents

On or before the Effective Date, the Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### L.    No Stay of Confirmation Order

The Proponents shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

-41-

**M.    Bankruptcy Rule 9019 Request; Impact**

The Plan, including the Plan Supplement or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtor hereby requests approval of all compromises and settlements included in the Plan and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

Dated:  April 1, 2019

National Auto Lenders, Inc.

By: */s/ Dania Ramos-Infante*
     Name:  Dania Ramos-Infante
     Title:   Vice President, Chief Financial
     Officer and Chief Operating Officer

The Official Committee of Unsecured Creditors

By: */s/ Alex Muxo*
     Name:  Alex Muxo
     Its:      Chairperson


BERGER SINGERMAN LLP
*Counsel for Debtor and*
*Debtor-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
Telephone  (305) 755-9500
Facsimile  (305) 714-4340

By:    */s/    Paul Steven Singerman*
    Paul Steven Singerman
    Florida Bar No. 378860
    singerman@bergersingerman.com
    Jordi Guso
    Florida Bar No. 0863580
    jguso@bergersingerman.com

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for the Official Committee of*
*Unsecured Creditors*
100 SE 2nd Street, 44th Floor
Miami, FL 33131-2100
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: :    */s/   Paul J. Battista*
    Paul J. Battista
    Florida Bar No. 884162
    pbattista@gjb-law.com
    Glenn D. Moses
    Florida Bar No. 174556
    gmoses@gjb-law.com